IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LOYD MACK BOYD,

       Plaintiff,

vs.                                                   No. 1:10-CV-00602 RB/KBM

HI COUNTRY CHEVROLET, a New Mexico
corporation; JEFF THOMAS and DENNIS
GONZALES,

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter came before the Court on Defendants' Motion for Partial Summary Judgment as to Release of Claims (Doc. 144), filed on June 22, 2011.  Jurisdiction arises under 28 U.S.C. §§ 1331 and 1367.  The Court having considered the submissions and arguments of counsel, relevant law, and being otherwise fully advised, **DENIES** Defendants' motion on the ground that Defendants' procurement of Plaintiff's Release violated New Mexico law regarding the unconditional payment of wages conceded to be due.

I.      **Background**

In reciting the facts, the Court reviews the record and the inferences derived therefrom in the light most favorable to the non-movant.  *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1225 (10th Cir. 1999).  The following facts are uncontested except where otherwise noted.

A.      *Overview*

This action arises from Defendant Hi Country Chevrolet's termination of former employee, Loyd Mack Boyd, who claims he was fired as a result of unlawful age

discrimination.[1]  (Compl. ¶ 25.)  Defendant Hi Country Chevrolet ("Hi Country") is an
automobile dealership located in Farmington, New Mexico and incorporated in the State of New
Mexico.  (Compl. ¶ 4.)  Defendant Jeff Thomas is the owner and president of Hi Country.
(Compl. ¶ 23.)  Defendant Dennis Gonzales is the Hi Country employee who directly terminated
Boyd's employment.  (Compl. ¶ 21.)

   Mr. Boyd began his employment with Hi Country in August of 2002.  (Compl. ¶ 15.)  On
March 18, 2008, Defendant Dennis Gonzales called a meeting with Boyd and Boyd's supervisor,
Vicki Granito, in which he terminated Boyd's employment with Hi Country.  (Compl. ¶¶ 16-17)
(*see also* Deposition of Vivian "Vicki" L. Granito, Exh. "B" to Def. Motion for Partial Summary
Judgment, at 93).  Defendants' Employee Separation Report, completed the day of Boyd's
termination, cites the reason for this "separation" as "reorganization of [the] company."  (Exh.
"A" to Def. Motion for Partial Summary Judgment, Doc. 144-1.)

   Boyd asserts that when he asked Gonzales the "real reason" he was being fired, Gonzales
replied that the company wished to hire "younger blood." (Notice of Factual Background at 1,
Doc. 175) (*see also* Compl. ¶ 21).  Boyd further contends that the day following his termination,
Defendants replaced him with a less-qualified individual under 40 years of age.  (Compl. ¶¶ 19-
20, 26.)  He alleges that several other dealership employees who were over the age of 40 were
similarly fired and replaced by younger workers.  (Compl. ¶ 22.)  According to Plaintiff, "each
of the five employees the Defendants have stated they terminated due to the 'reorganization' is
in the age group protected by the Age Discrimination in Employment Act."  (Notice of Factual
Background at 2, Doc. 175).  Defendants deny each of the allegations contained in this

_____

[1]Mr. Boyd is currently 65 years old.  (Notice of Factual Background at 1, Doc.  175.)

paragraph.  (Def. Answer ¶¶ 19-22.)

Following an investigation by the Equal Employment Opportunity Commission ("EEOC") into Boyd's firing, the EEOC issued a finding of reasonable cause to support a claim against Defendant Hi Country for discrimination under the federal Age Discrimination in Employment Act.  (Compl. ¶ 12.)  The EEOC issued a Right to Sue Notice dated March 24, 2010.  (Compl. ¶ 13.)  The New Mexico Department of Workforce Solutions issued an Order of Non-determination dated April 1, 2010.  (Compl. ¶ 13.)  Mr. Boyd subsequently brought the instant case in this Court.  (Notice of Factual Background at 2, Doc. 175.)

B.  *The Mutual Release*

During the meeting in which Boyd was terminated, Defendant Gonzales presented Boyd with his final paycheck in the amount of $4,687.64.  (Payroll Check, Exh. "C" to Def. Reply to Plaintiff's Response to Motion for Partial Summary Judgment) (*see also* Granito Dep., Exh. "B" to Def. Motion for Partial Summary Judgment, at 94:16-18).  Boyd immediately disputed Defendants' calculation of this final amount, claiming that Hi Country had previously taken a $4400 draw against his commissions which they neglected to add to his final check.  (Employee Separation Report, Exh. "A" to Def. Motion for Partial Summary Judgment, at 2.)  Boyd additionally believed Hi Country owed him vacation pay for one week of 2007 and one day for 2008.  *Id.*  His supervisor, Ms. Granito, left the room to consult with another employee regarding Boyd's claim and to determine whether Hi Country owed him this additional sum.  (Granito Dep., Exh. "B" to Def. Motion for Partial Summary Judgment, at 94:3-9.)  After searching Hi Country's business records for approximately 20 to 30 minutes, Ms. Granito returned to the meeting and informed Boyd that they needed more time to locate the requisite information.

(Granito Dep., Exh. "B" to Def. Motion for Partial Summary Judgment, at 94:15-19.)  She gave Boyd the check they had previously issued and instructed that they would follow up with him regarding the remaining payment.  *Id.*

Hi Country asserts that it was never able to locate any records either confirming or denying Boyd's claim.  (Granito Dep., Exh. "B" to Def. Motion for Partial Summary Judgment, at 102:6-10.)   Nevertheless, "in good faith," Hi Country decided to pay Boyd the $4400.  *Id.* Boyd returned to Hi Country to collect his second check on March 21, 2008, three days after his termination.  (Def. Reply to Plaintiff's Response to Motion for Partial Summary Judgment, at 9-10.)  He again met with Ms. Granito, who instructed him to sign a document entitled "Mutual Release and Separation Agreement" ("the Release") in order to receive his final check.  (Granito Dep., Exh. "B" to Def. Motion for Partial Summary Judgment, at 102:14-25, 103:1-8.)  His account of their exchange is as follows:

> I was there to pick up my check.  Vicki Granito told me that she was waiting for the form from the attorney, that they printed it one way and they decided they wanted it to be another way.  And I said, well, why do I need to sign this?  And they said, well, they're not going to give you your check unless you sign it.  She told me you go ahead and sign this and I will get you a copy of the one that they decide on.  I was there to pick up my check.  I had no income, no pay, I wanted my paycheck.  They told me before they weren't going to give it to me, so I signed what she had, got my check, went straight to the bank and cashed it.

(Boyd Dep., Exh. "D" to Def. Motion for Partial Summary Judgment, at 126:25, 127:1-8.)

Boyd asserts that Ms. Granito never explained what the document was or that it functioned to release his claims against Hi Country.  (Boyd Dep., Exh. "D" to Def. Motion for Partial Summary Judgment, at 126:25, 127:1-8, 129:18-22.)  Boyd further states that Ms. Granito had two different versions of the Release in her possession, and that she stated, "I don't know which one of these we're going to use and I can't give you your check until I know."  (Boyd

4

Dep., Exh. "D" to Def. Motion for Partial Summary Judgment, at 128:9-15.)  Boyd then replied,
"fine, I'll sign both of them if you'll give me my check."  *Id.*  Boyd allegedly signed both forms
without reading the contents of either document.  (Boyd Dep., Exh. "D" to Defendants' Motion
for Partial Summary Judgment, at 128:16-22.)  In contrast to Boyd's account, Ms. Granito does
not recall Mr. Boyd signing more than one Release. (Granito Dep., Exh. "B" to Def. Motion for
Partial Summary Judgment, at 104:13-14.)   Ms. Granito did not sign the Release during the
meeting, but rather provided the copy signed by Boyd to Defendant Jeff Thomas, owner of Hi
Country, who signed the Release the following day. (Exh. "C" to Def. Motion for Partial
Summary Judgment.)  Defendants admit that they required Boyd to sign the Release in exchange
for the $4400 he claimed was owed.  (Granito Dep., Exh. "B" to Def. Motion for Partial
Summary Judgment, at 102: 14-25; 103: 1-8) (*see also* Def. Reply at 6 " . . . Defendants provide
[sic] the requested money in return for Plaintiff's signature on the mutual release.")

The document was entitled "Mutual Release and Separation Agreement," which
purported to be a voluntary agreement releasing both parties from:

> (i) any and all claims under the Employment Agreement, including but not limited to
> claims for compensation of any kind, attorney's fees and costs, and
>
> (ii) all other claims of any kind whatsoever, known or unknown, which could have arisen
> out of Boyd's employment with and/or separation from Hi-Country through the date of
> this Agreement.  Boyd and Hi-Country also hereby agree to refrain from filing or
> asserting any claims of any kind against each other, their officers, shareholders, directors,
> managers, employees, agents, representatives, assigns or successors in interest, in any
> forum, with respect to the Employment Agreement, this Agreement, or any federal, state
> or local laws or regulations or common law.

(Exh. "C" to Def. Motion for Partial Summary Judgment.)

The Release preserved, however, Boyd's continuing obligations under Sections 9 and 10
of his Employment Agreement relating to Confidential Information and

Competition/Solicitation, respectively. (Exh. "C" to Def. Motion for Partial Summary Judgment.) Excepting the survival of these sections, the Release terminated the then-existing Employment Agreement between the parties. (Exh. "C" to Def. Motion for Partial Summary Judgment.)

Boyd claims that Ms. Granito promised he would be sent a final copy of the document, signed by both parties, after Defendants determined which version they intended to use. (Boyd Dep., Exh. "D" to Def. Motion for Partial Summary Judgment, at 125:25.) However, he asserts that Defendants failed to follow through with this promise and that he did not see a final, fully executed copy of the Release until Defendants' production of the document two days prior to filing the instant motion. (Boyd Dep., Exh. "D" to Def. Motion for Partial Summary Judgment, at 128:1-2) (*see also* Plaintiff's Response to Def. Motion for Partial Summary Judgment, at 5.) Ms. Granito believes, but is not certain, that she provided Boyd with a copy of the document he signed at the time of the meeting. (Granito Dep., Exh. "B" to Def. Motion for Partial Summary Judgment, at 105:16-17, 22-24.)

Following EEOC's finding of reasonable cause to support a federal age discrimination claim, Boyd filed his Complaint in this Court on June 22, 2010 (Doc. 1), asserting nine separate causes of action against Defendants: (1) Age Discrimination under the New Mexico Human Rights Act (Count I); (2) Violation of the Age Discrimination in Employment Act of 1967 (Count II); (3) Intentional Infliction of Emotional Distress (Count III); (4) Negligent Hiring, Training, Retention, Management and Supervision (Against Hi Country and Jeff Thomas) (Count IV); (5) Breach of Contract (Count V); (6) Breach of Covenant of Good Faith and Fair Dealing (Count VI); (7) *Prima Facie* Tort (Count VII); (8) Intentional Interference with Contract

(Against Defendants Thomas and Gonzales) (Count VIII); and (9) Wrongful Termination (Count IX).

Defendants filed their Motion for Partial Summary Judgment as to Release of Claims on June 22, 2011. (Doc. 144.) Defendants claim that the Mutual Waiver signed by Plaintiff precludes him from asserting any state law claims arising from his employment with Hi Country. Defendants do not move for summary judgment on Boyd's federal claim under the Age Discrimination in Employment Act.

Plaintiff filed his response on July 25, 2011 (Doc. 176), arguing that Defendants' motion must be denied on multiple grounds. First, Boyd contends that Defendants did not disclose the existence of the fully executed waiver until two days prior to filing their motion for partial summary judgment, and that this document should have been disclosed as an initial disclosure on or before the initial disclosure deadline of September 22, 2010. Alternatively, he argues that Defendants should have provided the Release in response to his Request for Production No. 2. Second, he argues that the Defendants have waived their ability to assert the affirmative defense of "release" by failing to assert this defense in their answer to Plaintiff's Complaint or in their Rule 16 Joint Status Report. Third, Boyd contends that the motion should be denied on the grounds that there are material issues of fact with regard to the execution of the Release, and that Defendants have failed to show valid consideration for the agreement. Fourth, Boyd argues that the motion should be denied because if a jury were to credit Boyd's testimony with regard to the execution of the Release, Defendants would be unable to demonstrate Boyd's "acceptance" of the document, thus rendering the Release invalid. Fifth, Boyd argues that the Release was executed in violation of federal and state statutes concerning the unconditional payment of

undisputed wages and is therefore unenforceable.  Finally, Boyd asserts that the Court should

deny the motion because Defendants coerced Boyd into signing the Release under duress. In

their Reply (Doc. 180) filed Aug. 8, 2011, Defendants maintain that Boyd has failed to raise any

issue of material fact, instead relying on conclusory allegations lacking factual support in the

record.

## II.    Standard

Summary judgment is appropriate where the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R.

CIV. PROC. 56(a).  "Where . . . [a] defendant is seeking summary judgment on the basis of an

affirmative defense, the defendant . . . must demonstrate that no disputed material fact exists

regarding the affirmative defense asserted."  *Johnson v. Riddle*, 443 F.3d 723, 724 n.5 (10th Cir.

2006).  Should the defendant meet this burden, "the plaintiff must then demonstrate with

specificity the existence of a disputed material fact.  If the plaintiff fails to make such a showing,

the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as

a matter of law."  *Id.*  "Since a party moving for summary judgment on the basis of an

affirmative defense would bear the burden of proof at trial, the party cannot carry his or her

burden merely by pointing to an absence of evidence supporting the nonmoving party's claim,

but must come forward with affirmative evidence showing the absence of a triable issue

regarding the validity of the defense."  Federal Procedure, Lawyers Edition, 27A Fed. Proc., L.

Ed. § 62:608 (2011).

"A party asserting that a fact is genuinely disputed must support this assertion by citing

to particular parts of materials in the record, including depositions, documents, electronically

stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. Proc.56(c)(1)(A).  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. Proc. 56(e) & 56(e)(2). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' "  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)).  When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Muñoz v. St. Mary Kirwan Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

## III.    Discussion

Plaintiff first makes two procedural objections to Defendants' production of the Release in support of their motion, arguing that the civil rules preclude Defendants from offering the Release at this late stage in the litigation.  The Court finds that although production of the Release is not barred by the Federal Rules of Civil Procedure, Defendants' procurement of Boyd's Release violated New Mexico state law concerning the unconditional payment of earned wages.  Thus, the Court finds that the Release is unenforceable as a bar against Plaintiff's state law claims.

### A.    *The Release is not Barred by Federal Rules of Civil Procedure 26(a)(1) and 37(c)(1)*

Plaintiff first asserts that Defendants' motion should be denied because Federal Rule of Civil Procedure 26(a)(1) required Defendants to produce the Release no later than the initial disclosure deadline of September 22, 2010.  Alternatively, Boyd argues that Defendants were

obligated to produce the fully executed Release in response to his Request for Production No. 2, sent to Defendants on December 17, 2010, in which he asked for "every written contractual agreement pertaining to the subject matter of the complaint, whether in draft form or signed by any of the parties to this case or their employee(s) or agent(s)."  (Plaintiff's Response to Def. Motion for Partial Summary Judgment, at 3 & 5 n.2) (*see also* Certificate of Service, Plaintiff's First Interrogatories and Requests for Production of Documents to Defendants Hi-Country Chevrolet, Jeff Thomas and Dennis Gonzales, Doc. 27).  Defendants initially objected to this discovery request on the grounds that it sought confidential information and was overbroad. (*See* Defendants' Answers and Responses to Plaintiff's First Interrogatories and Requests for Production of Documents, Exh. "B" to Plaintiff's Response to Def. Motion for Partial Summary Judgment, at 11.)  However, Defendants did provide Plaintiff with a partially executed version of the Release on February 22, 2011, which contained Boyd's signature but not that of Defendant Jeff Thomas.

Boyd contends that he would be unfairly prejudiced by the late introduction of the fully executed document "after having litigated the case for almost three years with no indication from Defendant that the final, fully executed document upon which they now rely existed, or that Defendants intended to raise it as a defense against all of his state law claims."  (Plaintiff's Response to Def. Motion for Partial Summary Judgment, at 4-5.)  Had Boyd known Defendants intended to introduce the Agreement as a bar against his state law claims, he argues, he would have expended more resources addressing these issues throughout all phases of discovery.  *Id.*

Federal Rule of Civil Procedure 26 provides that "a party must, without awaiting a discovery request, provide to the other parties . . . a copy–or a description by category and

location–of all documents . . . the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." FED. RULES CIV. PROC. § 26(a)(1). Parties remain under an ongoing obligation to supplement disclosures; a party who has made a disclosure pursuant to Rule 26(a) must supplement or correct its disclosure or response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." FED. RULES CIV. PROC. § 26(e). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless*." FED. RULES CIV. PROC. § 37(c)(1) (emphasis added).

"The determination whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). In the Tenth Circuit, although "[a] district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose," *id.*, the court's inquiry should be guided by the following four factors: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. *Id.*

On balance, these factors weigh in favor of permitting Defendants to produce the Release at this stage of the litigation. As to the first *Woodworker* factor, Plaintiff argues that Defendants'

late disclosure of the Release in support of the instant motion creates the precise type of harm and surprise the federal rules seek to prevent.  It is undisputed, however, that Boyd was aware as early as December of 2010 that a partially executed version of the Release existed.  During a December 6, 2010 deposition, Defense counsel showed and specifically questioned Boyd regarding a copy of the Release which contained Boyd's signature but not that of Defendant Jeff Thomas.  (Boyd Dep., Exh. "D" to Def. Motion for Partial Summary Judgment, at 125-130.)  At that point, Plaintiff became aware that Defendants had the partially executed Release in their possession and could be in the process of locating the final version.  Further, this version was signed by Boyd himself, and could have been held against him on that basis notwithstanding the absence of his employer's signature.  *See, e.g., Balboa Const. Co., Inc. v. Golden*, 97 N.M. 299, 304, 639 P.2d 586, 591 (N.M. 1981) ("[T]he writings relied upon to evidence the existence of the purported contract between the parties must be signed by the party to be charged, or if only one is signed, it must appear that it was signed with reference to the others.").  Finally, Defendants provided the partially executed Release to Boyd in February of 2011. (Plaintiff Response to Def. Motion for Partial Summary Judgment, at 5 n.2.)

Although Boyd claims that Defendants' apparent inability to produce the final, signed document "led [him] to believe that a final, fully executed version of the document did not exist," this mistaken belief cannot support a claim of prejudice or surprise under the *Woodworker* factors.  In an unpublished Tenth Circuit case, *Hirpa v. IHC Hospitals*, 50 Fed. Appx. 928 (10th Cir. 2002), the court evaluated a claim for attorney fees and costs arising from a medical malpractice action in which the plaintiff's case was dismissed following the defendants' late disclosure of microscopic slides conclusively exculpating the defendants from liability.

Early in the litigation, the defendants had believed the slides were destroyed in accordance with the Hospital's records retention police. *Id.* at 931. However, after the deadline for discovery had passed, a representative of the Hospital located them in an off-site storage facility. *Id.* The defendants then produced these slides despite the passing of the discovery period. *Id.* at 930-31. In concluding the district court had not abused its discretion in finding that the late disclosure was substantially justified and harmless, the court emphasized that the plaintiff knew, even before he filed suit against the defendants, that the slides existed and that they were critical to a central factual issue in the case. *Id.* Further, plaintiff's counsel had never formally requested the slides or inquired into their whereabouts. *Id.* Although the plaintiff argued that "from the earliest stages of [the] case, plaintiff's counsel understood and believed that the slides had been misplaced or destroyed by the Hospital," the court found that this fact did not make the slides' disclosure unjustified or harmful given the plaintiff's prior awareness of their existence. *Id.* The court further noted that there was no evidence indicating that the Hospital or its attorneys were responsible for plaintiff's erroneous belief. *Id.*

The Court finds the reasoning of the *Hirpa* court persuasive. Although Boyd mistakenly believed that the fully-executed Release did not exist, he was on notice as early as December of 2010 that Defendants were in possession of a partially executed copy and that they considered it an issue worth highlighting in his deposition. In addition, Plaintiff's counsel deposed Ms. Granito, Boyd's former supervisor who personally provided Boyd with the Release to sign, regarding the Release even before Defendants filed their motion for partial summary judgment. (Granito Dep., Exh. "B" to Def. Motion for Partial Summary Judgment, at 102-105.) In this deposition, Plaintiff's counsel specifically inquired into the circumstances surrounding Boyd's

signature on the Release.  (Granito Dep., Exh. "B" to Motion for Partial Summary Judgment, at 102-105.)  Although Defendants failed to provide the *fully* executed document in their initial disclosures or in response to Plaintiff's Request for Production No. 2, they did provide the non-final version and therefore put Plaintiff on notice of this potential defense against his claims. Finally, although in *Hirpa* the discovery deadline had passed, here the Defendants disclosed the Release approximately one month before the end of the discovery period.  Thus, the first *Woodworker* factor weighs in favor of Defendants.

As to the second and third *Woodworker* factors, the Court recognizes that the deadlines of July 29, 2011, for discovery, and August 16, 2011, for discovery and pretrial motions, have passed.  The Court further recognizes that trial has been set for January 9, 2012.  Thus, Boyd no longer has the opportunity to depose witnesses regarding the fully executed release.  However, Boyd was on notice of the existence of the Release as early as December 2010.  There was ample opportunity between that time and the date upon which Defendants filed their motion for partial summary judgment (June 22, 2011) in which to depose witnesses regarding the execution and enforceability of the Release.  As noted above, Plaintiff's counsel did in fact question Ms. Granito regarding Boyd's signature on the Release prior to the filing of Defendants' motion. (Granito Dep., Exh. "B" to Def. Motion for Partial Summary Judgment, at 102-105.)  In addition, Plaintiff had the opportunity to notice further depositions of witnesses between the filing of Defendants' motion and the conclusion of discovery.  Thus, the Plaintiff had the ability to cure any prejudice caused by the Release prior to the close of discovery and it is unlikely that its production at this point would disrupt trial.

Finally, although Defendants would have been better served to produce this document

14

earlier in the litigation, there is no evidence that their inability to locate the Release until June of

2011 was a result of bad faith or willfulness.  Thus, on balance, the *Woodworker* factors weigh in

favor of allowing Defendants to produce the Release as a basis for the instant motion.

      B.    *Defendants have not Waived the Affirmative Defense of Release*

Plaintiff next argues that Defendants have waived the affirmative defense of "release" by

not raising it in their Answer to Plaintiff's Complaint, filed on July 28, 2010, or as part of the

Joint Status Report filed on October 13, 2010.  The Court disagrees and finds that Defendants

have not waived the defense.

Federal Rule of Civil Procedure 8(c) requires parties to affirmatively state the matters it

intends to raise as affirmative defenses in its responsive pleadings.  The rules specifically include

"release" as an affirmative defense subject to Rule 8.  Generally, "[i]f such defenses are not

affirmatively pleaded, asserted with a motion under Rule 12(b), or tried by the express or

implied consent of the parties, such defenses are deemed to have been waived and may not

thereafter be considered as triable issues in the case." *Radio Corp. of America v. Radio Station*

*KYFM, Inc.*, 424 F.2d 14, 17 (10th Cir.1970) (internal citations omitted); *see also Renfro v. City*

*of Emporia, Kan.*, 948 F.2d 1529, 1539 (10th Cir. 1991) ("Fed.R.Civ.P. 8(c) requires that

affirmative defenses be pleaded or they are deemed waived.").  However, the Tenth Circuit has

held that "strict adherence to the pleading requirement is inappropriate when the purpose of the

requirement has been otherwise fulfilled." *Ahmad v. Furlong*, 435 F.3d 1196, 1201 (10th Cir.

2006).  The purpose of pleading an affirmative defense "is to give the opposing party notice of

the [defense] and a chance to argue, if he can, why the imposition of [the defense] would be

inappropriate." *Id.*; *see also Williams v. Ashland Eng'g Co.*, 45 F.2d 588, 593 (1st Cir. 1995)

("Rule 8(c)'s core purpose [is] to act as a safeguard against surprise and unfair prejudice . . . . Where, as here, a plaintiff clearly anticipates that an issue will be litigated, and is not unfairly prejudiced when the defendant actually raises it, a mere failure to plead the defense more particularly will not constitute a waiver.")

The Tenth Circuit has specifically considered whether defendants may raise an affirmative defense for the first time on summary judgment, equating this maneuver to a "constructive amendment" of the original answer. *Furlong*, 435 F.2d at 1204. "Rather than demanding that the defendant first move to amend the answer, [courts] need only apply the same standards that govern motions to amend when we determine whether the defendant should be permitted to 'constructively' amend the answer by means of the summary-judgment motion." *Id*. at 1202. This analysis entails consideration of prejudice to the opposing party, "undue delay, bad faith or dilatory motive . . . , or repeated failure to cure deficiencies by amendments previously allowed." *Id*.

These considerations do not warrant exclusion of Boyd's Release. As discussed above, Boyd is not prejudiced by Defendants' late assertion of the Release as an affirmative defense because he was on notice of the Release's existence as early as December of 2010. Furthermore, Plaintiff's counsel specifically deposed Boyd's former supervisor regarding the circumstances under which Boyd signed the document even before Defendants filed their motion. Finally, Defendants offered the Release within the discovery period and there is no evidence that their delayed disclosure was a result of bad faith or dilatory motive. Thus, the Release is not barred by Rule 8(c).

C.    *Defendants' Procurement of Boyd's Release Violated New Mexico State Law*

Because the Court finds the Release is not barred by the Rules of Civil Procedure, it must next consider whether the Release is substantively enforceable against the Plaintiff as a bar against his state law claims.  Assuming *arguendo* that Defendants can show the elements of valid contract formation[2] under New Mexico law, the Court finds that Defendants' procurement of Boyd's Release violated state law concerning the unconditional payment of wages conceded to be due, rendering the Release unenforceable.  The Court therefore denies Defendants' motion for partial summary judgment on this basis and declines to consider Plaintiff's remaining arguments.

New Mexico law dictates that when an employee is terminated and there is a dispute as to the correct wages to be paid, "the employer shall give written notice to the employee of the amount of wages which he <u>concedes to be due</u>, and shall pay such amount, <u>without condition</u>, within the times fixed by this act.  The acceptance by the employee of any payment so made, shall not constitute a release as to the balance of his claim."  1978 NMSA § 50-4-7 (emphasis added).  The statute further provides that "[a]n employer who violates or fails to comply with any provision of Sections 50-4-1 through 50-4-12 NMSA 1978 is guilty of a misdemeanor . . . . In case the employer is a corporation, the fine provided in this section shall be assessed against

---

[2] "Ordinarily, to be legally enforceable, a contract must be factually supported by an offer, acceptance, consideration, and mutual assent."  *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 669, 857 P.2d 776, 780 (N.M. 1993).  Although the Court will assume for purposes of this motion that these elements have been met, the Court notes that there is no indication in the record – nor do Defendants ever claim – that Boyd read the Release during his meeting with Ms. Granito, that there was any frank discussion of the document's meaning, that there was any explanation of its terms or implications, that they gave him time to consider whether signing the Release was in his best interests, or that they encouraged him to speak with an attorney.  In fact, Defendants elicited his signature knowing that he had never spoken with an attorney despite an express provision in the Release affirming that Plaintiff "had the opportunity to consult with an attorney, and that he . . . executed this Agreement with a full and complete understanding of his rights and obligations . . . ." (Def. Exh. "C" to Def. Motion for Partial Summary Judgment.)

the corporation as a penalty." 1978 NMSA § 50-4-10(a) & (d).

When Mr. Gonzales provided Boyd with his final paycheck upon termination, Boyd immediately disputed Defendants' calculations and contended that Defendants owed him additional compensation both for (1) a $4400 draw Defendants had previously taken against his commissions, and (2) vacation pay. (Employee Separation Report, Exh. "A" to Def. Motion for Partial Summary Judgment, at 2.) Although Defendants later paid Boyd the $4400 he claimed was owed, Defendants state at multiple points throughout the record that they paid Boyd this sum *upon the condition* that he sign the Mutual Release. (Granito Dep., Exh. "B" to Def. Motion for Partial Summary Judgment, at 102: 14-25; 103: 1-8) (*see also* Def. Reply at 6 " . . . Defendants provide [sic] the requested money in return for Plaintiff's signature on the mutual release.") The question, therefore, is whether Defendants ultimately "conceded" this $4400 to be due. If so, then Defendants violated § 50-4-7 when they conditioned Boyd's payment upon his releasing any potential claims against Hi Country and its agents.

Although Defendants contend that the $4400 was always a disputed amount because they were unable to locate documentation either supporting or contravening Boyd's claim, the plain language of Defendants' unilaterally-drafted Release directly belies this argument. Paragraph 2 of the Release reads:

> Hi-Country agrees to pay Boyd the amount of Four Thousand Four Hundred and No/100 Dollars ($4,400.00), less all applicable withholding of taxes, which amount <u>represents payment of Boyd's regular, bonus, and commission compensation through the Separation Date</u>. Boyd has no accrued vacation or sick leave as of the Separation Date. Boyd expressly understands and agrees that <u>this is all the compensation and benefits due him for services rendered through the Separation Date</u>.[3]

---

[3]The Release additionally contains an integration clause stating that "[t]his Agreement contains the entire agreement between the Parties regarding the employment and separation of Boyd from his employment with Hi-Country, and the termination of the Employment

(Def. Exh. "C" to Def. Motion for Partial Summary Judgment) (emphasis added).

New Mexico law prohibits the use of extrinsic evidence to override or contradict an express term of the contract. *Sanders v. FedEx Ground Package System, Inc*., 144 N.M. 449, 455, 188 P.3d 1200, 1206 (2008).  In arguing that the $4400 was a disputed amount, rather than "compensation and benefits due [to Boyd]," Defendants ask this Court to ignore the plain language of the contract as it negatively impacts their case while enforcing the remaining terms as a bar against Plaintiff's state law claims.  The Court further notes that Defendants specifically excluded Boyd's claimed vacation pay from the final sum, reinforcing the plain language reading that Defendants conceded the $4400 as compensation due to Boyd.  (Def. Exh. "C" to Def. Motion for Partial Summary Judgment) ("Boyd has no accrued vacation or sick leave as of the Separation Date.")  The Defendants themselves were the authors of this Release.  The Release definitively characterizes the $4400 as "compensation and benefits due [to] him for services rendered" through the date of his termination.  Section 50-4-7 requires that employers pay wages they concede to be due "without condition."  1978 NMSA § 50-4-7.  Defendants admit that they provided this compensation to Boyd on the express condition that he sign the mutual waiver.  Thus, Defendants' procurement of Boyd's Release violated state law.

New Mexico courts have held that "[g]enerally, a contract made in violation of a statute prescribing penalties is void."  *Eastland Financial Services v. Mendoza*, 132 N.M. 24, 27, 43 P.3d 375, 378 (N.M. App. 2008); *see also Farrar v. Hood,* 56 N.M. 724, 729, 249 P.2d 759, 762 (N.M. 1952) ("It is a general rule that transactions in violation of a statute prescribing penalties

---

Agreement, and is binding upon the Parties and their agents, representatives, assigns or successors in interest."  (Mutual Release and Separation Agreement, Exh. "C" to Def. Motion for Partial Summary Judgment.)

are void.")  However, the New Mexico Supreme Court has clarified that "th[is] rule is not an inflexible one to be applied in its fullest rigor under any and all circumstances."  *Eastland Financial Services*, 132 N.M. at 27.  Rather, "violation of a statute will not render a contract void if the legislature does not intend that result." *Id*.

Where, as here, a statute does not contain a provision expressly prohibiting enforcement of contracts entered into in violation of statutory language, courts will evaluate a contract's enforceability by "look[ing] to the policy of the transgressed law, the type of illegality involved in the contract, and the particular facts of the case."  *Id.* at p.9-11; *see also Farrar*, 56 N.M. at 729 ("The language of the statute, its subject matter and the purpose to be accomplished in its enactment, are matters of consideration in determining whether a contract is void or voidable."). New Mexico courts have not specifically addressed the public policy underlying § 50-4-7. However, the legislature's determination that an employer's violation of § 50-4-7 carries a criminal penalty strongly suggests that the statute's purpose is to protect the right of workers to be paid wages rightfully earned.  Given the frequent disparity in bargaining power between employers and terminated employees, the legislature likely included the phrase "without condition" in order to prevent employers from engaging in precisely the type of activity which occurred here: demanding that an employee subject to an employer's conditions – here, signing the Release – in order to receive wages conceded to be due.  The fact that Boyd "agreed" to the condition by signing the Release is immaterial; nothing in the statute indicates the legislature intended that employees be able to waive this requirement.  Furthermore, New Mexico courts have held employers to the strict terms of this statute in litigation addressing the notice provision of § 50-4-7.  *See Wolf v. Sam's Town Furniture, Inc*., 120 N.M. 603, 606, 904 P.2d 52, 55 (N.M.

Ct. App. 1995) (finding that an employer violated 1978 NMSA § 50-4-7 when it provided a payroll check to Plaintiffs for undisputed wages without providing a separate written notice of the amount conceded to be due: "The statute clearly and plainly states that 'in case of dispute over wages, the employer shall give written notice to the employee of the amount of wages which he concedes to be due, and shall pay such amount, without condition, within the times fixed by this act.' ").

Finally, as noted above, corporations that violate or fail to comply with any provision of the statute may be convicted of a misdemeanor and required to pay a fine. 1978 NMSA § 50-4-10(a) & (d). However, under New Mexico law, fines stemming from misdemeanor charges may not exceed $1000. 1978 NMSA § 31-19-1(a). Were courts to limit the remedy for violation of § 50-4-7 to a monetary fine while upholding a wrongfully imposed condition, employers may be encouraged to make self-interested calculations whether the condition was worth the fine to be paid. Employers could easily determine that imposing the condition of release and paying a limited fine is more cost-effective than potentially lengthy and expensive litigation. It is unlikely that the legislature intended this result.

Because Defendants' procurement of Boyd's Release violated the express requirements of § 50-4-7, the Court will not enforce the Release as barring Boyd's state law claims.

**WHEREFORE**,

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment is DENIED.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**